**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                    Case No. 06-20415

EDWARD W. FISHER,

       Defendant.

_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION FOR JUDGMENT OF
ACQUITTAL AND DENYING DEFENDANT'S MOTION FOR NEW TRIAL**

Pending before the court are a motion for judgment of acquittal and a motion for

new trial, both filed by Defendant Edward W. Fisher on July 31, 2008.  The Government

filed a response to each motion on September 3, 2008.  For the reasons stated below,

the court will deny both Defendant's motions.

**I.  BACKGROUND**

Defendant Edward W. Fisher was charged with two counts of conspiracy to

commit fraud.  Following Defendant's trial, a jury convicted Defendant of count one of

the indictment: conspiracy to defraud the Internal Revenue Service ("IRS").  Defendant

now argues there was insufficient evidence of his participation in the conspiracy to

support the jury's finding of guilt as to count one of the indictment and that a judgment

of acquittal must therefore be entered.  Defendant argues, in the alternative, that he

should receive a new trial because cumulative error in determining the admissibility of

evidence produced an unfairly prejudicial trial.

Defendant served as an attorney for Simplified Employment Services, Inc. ("SES") from 1994 to 2001.  SES was a professional employment organization, which administered, through its subsidiaries, many of the personnel and human resources functions of its client companies, including issuing employee pay checks and remitting employment taxes to the IRS.  In 1997, executives at SES began to conspire to file false and understated tax returns.  In addition, the conspirators falsified SES's relationship with clients, sometimes termed "co-employers," in an attempt to conceal SES's tax liabilities ("Back-Out Plan").  Defendant was alleged to have joined the conspiracy by late 1999.  Some evidence presented at trial indicated that Defendant may have generated the idea for the Back-Out Plan as early as 1997.  (D. Lambka Trial Tr. vol. II, 30, June 19, 2008.)  On May 9, 2000, Defendant retained attorney McGee Grigsby, of the law firm Latham & Watkins, LLP, as outside counsel on behalf of SES.  Grigsby's involvement was to be part of an SES plan, the government charged, to conceal the true cause of the tax liability from the IRS.

## II.  DISCUSSION

### A.  Defendant's Motion for Judgment of Acquittal

Defendant moves for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 because Defendant contends that the evidence presented at trial[1] is not sufficient to sustain a conviction for conspiracy to defraud the Internal Revenue Service ("IRS").  (Def.'s Mot. J.A. at 1.)  Defendant argues that he had no more than "mere

---

[1] Both Defendant and the Government refer to the trial exhibits by the designations given them at trial.  For convenience, this court will follow the same procedure.

2

knowledge" of criminal activity, and that he neither communicated with the IRS nor misled outside counsel McGee Grigsby regarding SES's tax liability.  (Def.'s Mot. J.A. at 1.)  In response, the Government maintains that the testimony presented at trial was capable of proving that Defendant joined the conspiracy to conceal SES's tax liability by attributing it to software and accounting problems and that Defendant communicated with SES's outside counsel to effectuate the cover-up.  (Gov't Resp. J.A. at 2.)

### 1.  Standard

The court may enter a judgment of acquittal if the evidence presented at trial is insufficient to support a conviction.  Fed. R. Crim. P. 29.  "In reviewing challenges regarding the sufficiency of the evidence presented to the jury, [the court is] limited to ascertaining whether, viewing the evidence in the light most favorable to the government, '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *United States v. Carmichael*, 232 F.3d 510, 519 (6th Cir. 2000) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); citing *United States v. Talley*, 164 F.3d 989, 996 (6th Cir. 1999)).  A court must therefore "draw all available inferences in favor of the jury's verdict."  *United States v. Maliszewski*, 161 F.3d 992, 1006 (6th Cir. 1998) (citing *United States v. Smith*, 39 F.3d 119, 121 (6th Cir. 1994)).  Moreover, "'[s]ubstantial and competent' circumstantial evidence by itself may support a verdict and need not 'remove every reasonable hypothesis except that of guilt.'"  *United States v. Lee*, 359 F.3d 412, 418 (6th Cir. 2004) (quoting *United States v. Stone*, 748 F.2d 361, 363 (6th Cir. 1984)).  Thus, "[a] defendant bringing such a challenge bears a 'very heavy burden.'"  *United States v.*

3

*Daniel*, 329 F.3d 480, 485 (6th Cir. 2003) (quoting *United States v. Vannerson,* 786 F.2d 221, 225 (6th Cir. 1986)).

## 2.  Discussion

To demonstrate a conspiracy, the Government must show (1) the conspiracy described in the indictment was willfully formed, and was existing at or about the time alleged; (2) that the accused willfully became a member of the conspiracy; (3) that one of the conspirators thereafter knowingly committed at least one overt act charged in the indictment at or about the time and place alleged; and (4) that such overt act was knowingly done in furtherance of some object or purpose of the conspiracy as charged. *United States v. Kraig*, 99 F.3d 1361, 1368 (6th Cir. 1996) (citing *United States v. Sturman*, 951 F.2d 1466, 1474 (6th Cir. 1991)); *United States v. Mullins*, 22 F.3d 1365, 1368 (6th Cir. 1994).  While "proof of a formal agreement is not necessary to establish a conspiracy," *United States v. Barger*, 931 F.2d 359, 369 (6th Cir. 1991), more is necessary than evidence showing "[m]ere knowledge or approval, without participation." *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973).  However, "'[i]t is only necessary that a defendant know of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance.'"  *Barger*, 931 F.2d at 369 (quoting *United States v. Luxenberg*, 374 F.2d 241, 250 (6th Cir. 1967)).  In addition, "'[a] conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.'"  *Id.* at 369 n.6 (quoting *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985)).

When "viewing the evidence in the light most favorable to the government,"

*Carmichael*, 232 F.3d at 519, the court finds that Defendant cannot satisfy the burden required for a judgment of acquittal. Defendant argues that based on the evidence presented at trial, the Government presented insufficient evidence to sustain its theory of conspiracy and makes two main arguments to support this contention: (1) Defendant possessed no more than "mere knowledge" regarding the conspiracy (as demonstrated by testimony from Janice Picklo, Dennis Lambka, and David Carlesimo); and (2) Defendant did nothing to further the conspiracy because he could not have misled Grigsby, who already knew about the tax liabilities.[2] However, neither argument demonstrates that there was such insufficient evidence presented by the Government as to require a judgment of acquittal; rather, Defendant engages in rearguing the impact or force of trial testimony, attempting, essentially, to discredit the Government's theory regarding the conspiracy.

First, Defendant argues that testimony presented by witnesses at trial shows that Defendant did not direct the misstatement of tax forms; at most, Defendant was present at meetings where filing false tax forms and the Back-Out Plan, among other things, were discussed, and this constitutes "mere knowledge" at best. Janice Picklo, an SES executive who was responsible for the calculation of employment taxes at SES, testified that she prepared IRS Form 941 quarterly employment tax returns ("Form 941"), deliberately under-reporting or under-paying the taxes at the direction of Dennis Lambka, chief executive officer at SES, but that she never told Defendant about this.

---

[2] Defendant also argues that any ethical violation he may have committed cannot form the basis for criminal liability. (Def.'s Mot. J.A. at 8.) The Government concurs (Gov't Resp. J.A. at 1), as does the court, in that attorneys, as such, will not be held to a different standard for conspiracy liability. *See Kraig,* 99 F.3d at 1368.

5

(Def.'s Mot. J.A. at 4-7.)  Dennis Lambka and David Carlesimo, the SES executive who was in charge of sales and marketing, further testified that while Defendant was sometimes present while they discussed Form 941 filings, Defendant did not take part in their preparation or the ultimate underpayment.  (Def.'s Mot. J.A. at 6.)  Defendant also emphasizes that some witnesses testified to Defendant's opposition to the under-payment of employment taxes and that no evidence showed Defendant had any contact with the IRS.  (Def.'s Mot. J.A. at 11-12.)  Defendant submits that this testimony demonstrates that, at most, he had knowledge of the conspiracy but that he took no action himself.  This contention, however, does not account for the fact that once the Government has established a conspiracy, little additional evidence is necessary to implicate Defendant.  *See United States v. Sturman*, 951 F.2d 1466, 1474 (6th Cir. 1991) (citing *United States v. Poulos*, 895 F.2d 1113, 1117 (6th Cir. 1990), abrogated on other grounds).  Defendant does not allege – nor could he – that no conspiracy existed; he argues only that he did not participate in it.

A "'rational trier of fact could have found . . . beyond a reasonable doubt'" that a conspiracy existed in which Defendant, Dennis Lambka, Ron Bray, and Dennis Stout agreed to falsify tax returns, engage in the Back-Out Plan, and blame software and accounting for their tax deficiency.  *See Carmichael*, 232 F.3d at 519; (Gov't Resp. J.A. at 2).  Even if Defendant himself did not submit false returns to the IRS, a plan to do so existed.  (Gov't Resp. J.A. at 2; Def.'s Mot. J.A. at 4-7.)  Dennis Lambka testified at trial that Defendant agreed to "take the strategy that the systems, the software and the people within the accounting department were to the major blame for the deficiency

6

within the tax taxes and that [Defendant] would convey this to [Grigsby]." (D. Lambka Trial Tr. vol. II, 40-41, June 19, 2008.)  David Carlesimo also testified at trial that any open opposition Defendant showed to the Back-Out Plan was merely anger that too many SES employees were working so openly on the project.  (D. Carlesimo Trial Tr. vol. IX, 7, July 1, 2008.)  Brian Lambka, Dennis Lambka's brother, also testified that he discussed with Defendant his intention to file inaccurate tax returns because of IRS agent's arrival on SES premises and requests for tax returns.  (B. Lambka Trial Tr. vol. II, 24-25, June 19, 2008.)  Evidence presented by the Government could have shown that Defendant hired and communicated to outside counsel Grigsby that software and accounting issues caused the tax deficiency.  A reasonable jury could infer that Defendant voluntarily contributed his efforts to, and knowingly participated in, the conspiracy, intending to assist it.  *See Sturman*, 951 F.2d at 1474 (finding that based on actions such as opening foreign bank accounts under assumed names and serving as a director at a corporation which channeled money to other businesses, a jury could reasonably infer that an individual participated in a conspiracy); *see also United States v. Hunt*, 521 F.3d 636, 647 (6th Cir. 2008) (holding that defendant doctor tacitly agreed to conspiracy to Medicare fraud when he signed private insurance bills for Medicare patients even though he denied knowledge that his co-conspirator fraudulently submitted the bills).

Furthermore, Defendant drafted a document, Exhibit 106, which purported to detail the causes of SES's tax liabilities ("Causes Document"), claiming that accounting and software issues were to blame for the underpayment of taxes.  Defendant was also

7

involved in drafting and revising a definition for a "co-employer," an SES term for a class

of client used by SES for tax purposes, in order that the definition would effectively

conceal SES's tax liabilities from the IRS.  A reasonable jury could have found that

these documents demonstrate Defendant's knowledge of and complicity in the co-

conspirators' crafting of a false story to explain the underpayment of employment taxes.

*See United States v. Conatser*, 514 F.3d 508, 518 (6th Cir. 2008) (holding that sufficient

evidence existed to convict defendant prison guard of conspiracy to assault inmates

when he stood outside prison cell while other guards assaulted inmates, falsified a

report, and joked about the assaults).  Based on Defendant's actions, a jury could

reasonably infer that he joined an on-going conspiracy.  The court will deny Defendant's

motion as to this argument.  *See Kraig*, 99 F.3d at 1368.

Second, Defendant maintains that the Government's theory that Defendant

participated in the conspiracy by misleading SES's outside counsel Grigsby is simply

wrong.  (Def.'s Mot. J.A. at 13.)  Defendant argues that the Government falsely

interpreted a number of trial exhibits and testimony and that Grigsby knew of the tax

liability, demonstrating that Defendant's role in the conspiracy could not have been to

conceal the tax liability from Grigsby.  In particular, Defendant submits the following:

> 1) Defendant's notes, contained in Exhibits 103 and 104, stating, "[N]ot
> recommending any voluntary disclosure," and, "Do not make voluntary
> disclosure," represent Grigsby's recommendation to SES regarding a legal
> strategy, or term of art, and do not demonstrate that Defendant concealed
> information from Grigsby.  (Def.'s Mot. J.A. at 13, 18.)

> 2) Defendant's role in the conspiracy could not have been to conceal
> SES's tax liabilities from Grigsby because Grigsby knew of the tax
> liabilities, as shown by Exhibit 101, Defendant's notes from a meeting with

8

Grigsby, stating, "A conscious decision was made to use tax dollars for other liabilities," and Exhibit 593, the Wyderko report on the amount of the tax liability, entitled "Tax Overview." (Def.'s Mot. J.A. at 19-22.)

3) Defendant wrote Exhibits 107 and 108, emails to which were attached a document regarding SES's definition of "co-employer" for Grigsby's review, and Defendant never submitted these documents to the IRS. (Def.'s Mot. J.A. at 22-23.)

4) Exhibits 105 and 106, an email exchange, which includes an attached document drafted by Defendant to explain the causes of the tax liabilities ("Causes Document") were really the ideas of Dennis Lambka's, Defendant merely served as the "scrivener." (Def.'s Mot. J.A. at 23-24.)

In each instance, Defendant offers no more than an alternate explanation or argument about the significance of each document and the related testimony. This does not satisfy the minimum requirement for a judgment of acquittal. A defendant must show that, when viewing the evidence in a light most favorable to the Government, no rational trier of fact could have found the elements beyond a reasonable doubt. *See Carmichael*, 232 F.3d at 519. A jury could have reasonably inferred from these documents that Defendant in fact concealed facts pertinent to the investigation from Grigsby. (Gov't Resp. J.A. at 3.)

First, a reasonable jury could have found that Exhibits 103 and 104 (no "voluntary disclosure") meant that Defendant would not reveal the true cause of the tax liabilities to anyone outside SES. In addition, a reasonable jury could have found that the statement "lay the foundation of our defense of bad data" (in Exhibit 104) referred to an intentionally false explanation which, together with Brian Lambka's testimony that Defendant's role in the conspiracy was to be to mislead Grigsby (B. Lambka Trial Tr. vol. II, 61-62, June 19, 2008), proved that Defendant did know of and participate in a

9

conspiracy to defraud the IRS.  Brian Lambka further testified at trial that he had

discussed with Defendant a strategy of nondisclosure, consistent with Exhibit 104,

towards Grigsby.  (B. Lambka Trial Tr. vol. II, 61-62, June 19, 2008.)  Defendant offers

only a plausible alternate explanation for the notes contained in Exhibits 103 and 104,

but this does not rebut the reasonable conclusions from the same evidence that a jury

would be entitled to draw.

Second, while Grigsby certainly knew of a tax liability – that is why Defendant

retained him on behalf of SES, Grigsby's knowledge does not demonstrate that

Defendant did not engage in a conspiracy to conceal from those outside SES, including

Grigsby, that the true cause of the tax liability was deliberate underpayment.

Defendant's notes, reflected in Exhibit 101, spoke of a "conscious decision . . . to use

tax dollars for other liabilities."  A reasonable jury could have concluded that such a

notation meant that Defendant knew about the tax underpayment, that he knew about

the intentional use of tax dollars for other things, and that he was involved in concealing

the intentional underpayment of taxes from the IRS and Grigsby.  This is further

supported by testimony from Dennis and Brian Lambka that Defendant's role in the

conspiracy was to conceal the real cause of the underpayment of taxes from Grigsby.

(D. Lambka Trial Tr. vol. II, 40-41, June 19, 2008; B. Lambka Trial Tr. vol. II, 61-62,

June 19, 2008.)

Third, Exhibits 107 and 108, a draft definition of "co-employer," could have been

considered by the jury to denote Defendant's efforts to further conceal from Grigsby and

the IRS the true cause of the tax liabilities.  The "co-employer" definition SES used prior

to re-drafting was vague and confusing.  SES executives exploited this ambiguity to effect their Back-Out Plan so as to make it appear that the underpayment of taxes was an inadvertent result of accounting or record-keeping errors.  A jury could have found that Defendant's communication with Grigsby regarding the definition constituted further concealment of the actual cause of the tax liabilities.  By revising the definition and sending the draft to Grigsby, the jury could have concluded that Defendant was directly participating in the conspiracy, in precisely the manner planned and later testified to by Dennis and Brian Lambka.  (D. Lambka Trial Tr. vol. II, 40-41, June 19, 2008; B. Lambka Trial Tr. vol. II, 61-62, June 19, 2008.)

Fourth, a rational jury could have concluded from Exhibits 105 and 106, which include the Causes Document, that Defendant participated in the conspiracy to mislead the IRS.  The document details the software and accounting problems which allegedly caused the underpayment of taxes.  While Defendant maintains that he merely acted as a "scrivener" of this document and that Dennis Lambka drafted it, a reasonable jury could have found that Defendant was not simply a scrivener, but that, knowing about the falsification of tax returns, he nonetheless participated in misleading Grigsby and others outside SES with the presentation of the Causes Document.  Such a conclusion, again, would fit the plan described at trial by Dennis and Brian Lambka.

In sum, the trial testimony and the documents and notes produced by Defendant could lead a rational jury to conclude that Defendant joined the conspiracy to defraud the IRS.  Defendant has at most demonstrated that he knew about the falsified tax returns, that he hired Grigsby as outside counsel, and that Grigsby knew that SES had

11

a tax liability.  Furthermore, Defendant offers no substantial argument regarding insufficiency of the evidence; rather, he reargues the evidence and testimony presented at trial and second-guesses the jury's determination regarding the same.  Defendant has not demonstrated that, when viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found him guilty beyond a reasonable doubt.  Accordingly, the court will deny Defendant's motion for a judgment of acquittal.

### B.  Defendant's Motion for New Trial

Defendant also moves for a new trial pursuant to Federal Rule of Criminal Procedure 33.  Defendant argues that errors by the court in determining the admissibility of evidence constitute reversible error and require a new trial.  Defendant alleges that the court incorrectly (1) denied Defendant's motion *in limine* to exclude Defendant's own attorney work-product, (2) excluded attorney Grigsby's notes from evidence, and (3) refused to answer the jury's question regarding consideration of Defendant's status as SES legal counsel.  The Government responds that (1) the crime-fraud exception permits admission of Defendant's attorney work-product, (2) Grigsby's notes were properly read into evidence, and (3) the court committed no error in referring the jury to the jury instructions rather than answering the jury's questions.

### 1.  Standard

Rule 33 allows the court to "vacate any judgment and grant a new trial if the interest of justice so requires."  Fed. R. Crim. P. 33(a).  The Sixth Circuit gives trial courts broad discretion in determining whether to grant a new trial pursuant to Rule 33 because "'[t]he trial judge is in the best position to determine . . . appropriate remedies

for any demonstrated misconduct.'" *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *Unite States v. Copeland*, 51 F.3d 611, 613 (6th Cir. 1995)).

When a defendant rests his argument for a new trial on the basis of cumulative error, he must show that the "combined effect of individually harmless errors was so prejudicial as to render his trial fundamentally unfair." *United States v. Trujillo*, 376 F.3d 593, 614 (6th Cir. 2004) (citing *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993)) (finding only harmless error when a trial judge admitted hearsay statements of government agents); *see also Wheaton*, 517 F.3d at 361 (affirming a denial of a motion for new trial because no prejudice resulted from juror's misconduct in which the juror looked at a map to determine the distance between two towns).

### 2. Discussion

Defendant asserts that errors by the court in determining admissibility of evidence and how to answer jury questions combined to form cumulative error such that Defendant should be granted a new trial pursuant to Rule 33. (Def.'s Mot. New Trial at 1.) The Government responds that the court did not err regarding any of these decisions.

### a. Defendant's Work-Product

Defendant first challenges the court's denial of his motion *in limine* to exclude Defendant's own notes as attorney work-product. (Def.'s Mot. New Trial at 2.) Defendant argues that the crime-fraud exception, invoked by the Government, was never sufficiently supported by the Government's witnesses at trial. (Def.'s Mot. New Trial at 5-6.)

13

In *Hickman v. Taylor*, 329 U.S. 495 (1947), the Supreme Court held that discovery rules did not support the relinquishment of an attorney's work-product to the opposing party. *Id.* at 510-11. The Court reasoned,

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what [the attorney] considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Id.* Nonetheless, certain exceptions to this rule exist. One, the crime-fraud exception, removes from the work-product privilege "advice given with respect to ongoing or future wrongdoing." *In re Grand Jury Subpoenas 04-124-03 and 04-124-05*, 454 F.3d 511, 520 (6th Cir. 2006). "It is the purpose of the crime-fraud exception . . . to assure that the seal of secrecy between lawyer and client does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime." *U.S. v. Zolin*, 491 U.S. 554, 563 (1989) (internal citations omitted). To demonstrate the applicability of the crime-fraud exception, the proposing party must "make a *prima facie* showing that a sufficiently serious crime or fraud occurred to defeat the privilege; second, the [party] must establish some relations between the communication at issue and the *prima facie* violation." *In re Antitrust Grand Jury*, 805 F.2d 155, 164 (6th Cir. 1986) (citing *In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985) ("The government satisfies its burden of proof if it offers evidence that if believed by the trier of fact would establish the elements of an ongoing or imminent crime or fraud.")); *see also* 10 Federal Procedure § 26:203 ("It is a sufficient showing if the discovering party presents evidence that, if

14

believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed when the work product was prepared."). Nonetheless, "[t]o drive the privilege away, there must be something to give colour to the charge; there must be prima facie evidence that it has some foundation in fact." *Clark v. U.S.*, 289 U.S. 1, 15 (1933) (internal citations omitted).

Defendant argues that Dennis Lambka's testimony was insufficient to sustain the Government's assertion of the crime fraud exception. (Def.'s Mot. New Trial at 2.) The court disagrees. Dennis Lambka's testimony in fact provided the requisite evidence for the crime-fraud exception. In particular, Dennis Lambka testified about the tax fraud that SES executives planned and explained that they "were going to take the strategy that the systems and the software and the people within were to the major blame, for the deficiency with the taxes, and that Mr. Fisher would convey this to Latham and Watkins." (D. Lambka Trial Tr. vol. II, 40-41, June 19, 2008.) Without determining that Defendant's meeting notes in fact constituted attorney work-product, the court held that the notes were admissible under the crime-fraud exception.[3] Rather than addressing why this testimony of Dennis Lambka's was insufficient to establish prima facie evidence of fraud, Defendant argues whether Dennis Lambka's testimony was or was not true. This, of course, is not a relevant inquiry for determining whether the crime-fraud exception applies in a particular case. *See In re Antitrust Grand Jury*, 805 F.2d at

---

[3] Defendant argues that the court should not have admitted certain documents made before the Government alleges that Defendant joined the conspiracy, i.e., 1999; however, Dennis Lambka's trial testimony indicated that Defendant himself may have generated the idea for the Back-Out Plan as early as 1997. (D. Lambka Trial Tr. vol II, 30, June 19, 2008.)

164.  Defendant's notes primarily consist of his communications with outside counsel Grigsby during the conspiracy.  Because Defendant's alleged role in the conspiracy was to communicate a fabricated cause for SES's tax liabilities to Grigsby, these notes can be viewed as made for that purpose, and thus intended to further the conspiracy.  This is sufficient to sustain the admission of the evidence under the crime-fraud exception.  Therefore, it was not error for the court to admit this evidence, and the court will deny Defendant's motion as to this issue*.*

### b.  Grigsby's Notes

Defendant next alleges that physical copies of the notes of Grigsby should have been admitted at trial, either under Federal Rule of Evidence 803(6) or Federal Rule of Evidence 106.  In response, the Government contends that Grigsby's notes were properly ruled inadmissible and that, in any case, Defendant could have asked Grigsby to read into evidence any portion of his notes, but did not.

Rule 803(6) allows admission of records of regularly conducted activity as an exception to the bar on hearsay evidence.  Rule 803(6) permits those documents or records "in any form . . . if kept in the course of a regularly conducted business activity, and if it was the regular practice of the business activity to make the [record]."  Fed. R. Evid. 803(6).  Under the Rule, a properly submitted and authenticated business record is received into evidence, and the jury permitted to examine the document during deliberations.  *See* Fed. R. Evid. 803(6).  Defendant also alleges that it was error to exclude Grigsby's notes from evidence because of Rule 106, the "rule of completeness."  Rule 106 states, "[w]hen a writing or recorded statement or part thereof

16

is introduced by a party, an adverse party may require the introduction at that time of

any other part or any other writing or recorded statement which ought in fairness to be

considered contemporaneously with it." Fed. R. Evid. 106. Any evidentiary decisions

regarding admissibility of evidence are committed to the discretion of the district court.

*United States v. McDaniel*, 398 F.3d 540, 544 (6th Cir. 2005).

Despite Grigsby's testimony regarding the regularity with which he takes and files

notes, the court did not find that the notes satisfied Rule 803(6) and declined to admit

them physically as business-records evidence.[4] Grigsby's notes were not of the type

contemplated by the Rule, as notes prepared for litigation are not admissible. *See*

*United States v. LaValley*, 957 F.2d 1309, 1314 (6th Cir. 1992) (upholding district court's

finding that because letters were not prepared for purposes of litigation, the letters were

admissible under the records of regularly conducted activity exception to hearsay).

Also, in *Palmer v. Hoffman*, 318 U.S. 109 (1943), the Supreme Court refused to validate

and admit as a record of a regularly conducted business a railroad company's accident

report where, even though litigation itself was not imminent, it was nonetheless

possible. *Id.* at 111. The Supreme Court explained,

> [T]he fact that a company makes a business out of recording its
> employees' version of their accidents does not put those statements in the
> class of records made 'in the regular course' of the business within the
> meaning of the [rule]. If it did, then any law office in the land could follow

---

[4] Defendant also argues that the notes are admissible for a nonhearsay purpose,
namely, to identify that certain events occurred, who the participants were, and when
certain meetings took place. Such purposes, however, were not argued at trial, and the
court will not declare error now on such basis as additional arguments regarding
relevance and prejudice, potentially requiring additional questions be put to Grigsby,
would have certainly been made if this argument had been timely raised.

the same course. . . . We would then have a real perversion of the rule
designed to facilitate admission of records which experience has shown to
be quite trustworthy.

*Id.* at 113.

Defendant here argues for precisely the "perversion of the rule" which the
Supreme Court warned against: Defendant engaged Grigsby specifically for resolution
of SES's tax liabilities with the IRS and now attempts to have admitted into evidence
notes made by Grigsby during his preparation for such proto-litigation efforts.  In
addition, Defendant was not prejudiced by the exclusion from evidence of Grigsby's
notes because Grigsby was nonetheless permitted to read the notes into the record as
his recorded recollection.  *See* Fed. R. Evid. 803(5).  In this way, the court balanced
traditional concerns regarding hearsay evidence with Defendant's desire to enter
Grigsby's notes into evidence.  When notes are read into the record as recollection
recorded, the notes themselves are not entered into evidence, *id.*, and the jury here did
not have them to examine during deliberations.  The court found that this result properly
accounted for hearsay concerns while allowing Defendant to augment Grigsby's
testimony with the notes.  Exclusion of this evidence was not in error, and the court will
deny Defendant's motion as to this issue.

As for whether the court should have admitted Grigsby's additional notes into
evidence pursuant to Rule 106, this, too, is a question committed to the discretion of the
district court.  *Jamison v. Collins*, 291 F.3d 280, 387 (6th Cir. 2002).  "Rule 106 is
intended to eliminate the misleading impression created by taking a statement out of
context . . . it is not designed to make something admissible that should be excluded."

18

*United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). Thus, Rule 106 will not admit into evidence documents that are otherwise considered hearsay, as are Grigsby's notes. In addition, the court ruled previously that admission of material, including what Defendant now alleges was error for the court to exclude, gave rise to

> a substantial danger of confusing the jury with lengthy handwritten notes that are not relevant in every detail to the evidence already admitted. That substantial likelihood of confusion outweighs – substantially – any possible relevance that may exist within the subject papers. A relevant clause or sentence does not mean that the whole document is indispensable and non-confusing. Instead, there is a likelihood of danger that the evidence will be cluttered in a manner that will tend to distract the jury from intelligent consideration of salient proofs. Further, Defendant's own testimony and the argument of his counsel are adequate for presenting his view of the 'context' of the admitted evidence and the import of the conversations['] recorded notes. . . . Showing context is a matter for argument and presentation of the case that can be accomplished short of inundating the jury with more documents.

(7/01/08 Order (footnote omitted).) Defendant does not contest this consideration of the court, but rather focuses on the alleged necessity of having Grigsby's notes entered into evidence. Defendant, however, had the opportunity to have Grigsby read any portion of his notes into evidence pursuant to Rule 803(5) as recollection recorded.[5] Indeed, Grigsby did read some of his notes into the record as recollection recorded. The court's decision was not in error, and the court will not grant a new trial on this basis.

### c. Jury Questions

---

[5] To the extent Defendant had chosen to do so, he would be the proposing, not "adverse" party relative to those notes, and would therefore have been prevented under Rule 803(5) from putting the notes physically before the jury. Fed. R. Evid. 803(5) ("If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.").

19

Finally, Defendant argues that the court erred in declining to more specifically answer the jury's questions submitted during deliberations.  The jury asked for instruction about the role of attorney-client privilege and a lawyer's possible duty to report illegal activities.  (Def.'s Mot. New Trial at 21.)  Specifically, the jury asked the following two questions: (1) "Do attorney/client privileges apply to [Defendant] in relation to his employment at SES?" (2) "If a legal counsel learns of illegal activities by his employer (if he is employed as their legal counsel) is the legal counsel legally required to report this to the appropriate authorities?"  (7/03/08 Ans. to Jury Questions.)  In response to Defendant's argument, the Government stated that the question regarding attorney-client privilege was not relevant to the count for which Defendant was convicted.

A district court has great discretion in responding to questions from a jury.  *U.S. v. Young*, 553 F.3d 1035, 1050 (6th Cir. 2009) (quoting *United States v. Khalil*, 279 F.3d 358, 367 (6th Cir. 2002)) (finding no abuse of discretion when the district court reiterated the jury instructions to the jury in answer to their question).  "Given that petitioner's jury was adequately instructed, and given that the trial judge responded to the jury's question by directing its attention to the precise paragraph of the constitutionally adequate instruction that answers its inquiry, the question becomes whether the Constitution requires anything more.  We hold that it does not."  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).  "Similarly, a jury is presumed to understand a judge's answer to its question."  *Id.* (citing *Armstrong v. Toler*, 11 Wheat. 258, 279 (1826)).

20

 In answer to the jury's questions in this case, the court stated,

[I]t is not necessary for you to hear the potentially complicated explanation that would be needed to accurately answer these two questions in order to correctly decide the issues and render a proper verdict.

The law governing attorney-client privilege is not simple or easy to summarize.  But the existence, if any, of an attorney-client privilege in the defendant's precise circumstances, and the scope and duration of such a privilege if it existed, need not be sorted out in order for the government to succeed in proving, or the defendant to raise defenses against, the conspiracy crimes alleged.

(7/03/08 Ans. to Jury Questions.)  The court reiterates here what it held at trial: attorney-client privilege was not relevant to the count upon which Defendant was convicted.  It is therefore irrelevant to the consideration of Defendant's motion for new trial.  As to the jury's question regarding an attorney's duty to report illegal activities, the court was correct to decline to answer, as the instructions in this case were sufficient.  Indeed, Defendant does not now challenge those.  The court's answer to the jury's questions was proper under the circumstances, and the court will deny Defendant's motion as to this issue.

## III.  CONCLUSION

For the reasons stated above, IT IS ORDERED that Defendant's motion for judgment of acquittal [Dkt. # 76] is DENIED.

IT IS FURTHER ORDERED that Defendant's motion for new trial [Dkt. # 77] is DENIED.

 S/Robert H. Cleland                                  
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

21

Dated:  April 8, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record
on this date, April 8, 2009, by electronic and/or ordinary mail.

 S/Lisa Wagner                    
Case Manager and Deputy Clerk
(313) 234-5522