**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                 Case No. 06-20415

EDWARD W. FISHER,

       Defendant.

_____/

**OPINION AND ORDER OVERRULING IN PART
DEFENDANT'S "GUIDELINE OBJECTIONS,"
DECLINING TO RULE ON THE OBJECTIONS IN PART,
AND SCHEDULING AN EVIDENTIARY HEARING**

Before the court is Defendant Edward W. Fisher's "Guideline Objections" to the

Presentence Report ("PSR"), filed April 17, 2009. Defendant also appended his

objections to the PSR. The Government filed a response on May 19, 2009. For the

reasons stated below, the court will overrule Defendant's objections in part, decline to

rule on Defendant's objections in part, and schedule a sentencing hearing.

**I. BACKGROUND[1]**

Defendant Edward W. Fisher was charged with two counts of conspiracy to

commit fraud. Following Defendant's trial, a jury convicted Defendant of count one of

the indictment: conspiracy to defraud the Internal Revenue Service ("IRS"), 18 U.S.C. §

371. On April 8, 2009, the court denied Defendant's motion for judgment of acquittal and

---

[1] Much of the background section is taken from the court's April 8, 2009 "Opinion
and Order Denying Defendant's Motion for Judgment of Acquittal and Denying
Defendant's Motion for New Trial."

motion for new trial because the evidence presented at trial was sufficient to uphold the jury's guilty verdict, and Defendant did not show that cumulative error at trial rendered his trial fundamentally unfair.

Defendant served as an attorney for Simplified Employment Services, Inc. ("SES") from 1994 to 2001.  SES was a professional employment organization, which administered, through its subsidiaries, many of the personnel and human resources functions of its client companies, including issuing employee pay checks and remitting employment taxes to the IRS.  In 1997, executives at SES began to conspire to file false and understated tax returns.  In addition, the conspirators falsified SES's relationship with clients, sometimes termed "co-employers," in an attempt to conceal SES's tax liabilities ("Back-Out Plan").  Defendant was alleged to have joined the conspiracy by late 1999.  Some evidence presented at trial indicated that Defendant may have generated the idea for the Back-Out Plan as early as 1997.  (D. Lambka Trial Tr. vol. II, 30, June 19, 2008.)  On May 9, 2000, Defendant retained attorney McGee Grigsby, of the law firm Latham & Watkins, LLP, as outside counsel on behalf of SES.  Grigsby's involvement was to be part of an SES plan, the Government charged, to conceal the true cause of the tax liability from the IRS.

Subsequent to Defendant's conviction, the probation department prepared a presentence report.  In the PSR, the probation officer recommended a total offense level of 25 and criminal history category I, which results in sentencing range of 57 to 71 months.  U.S.S.G. § 5G1.1(c).  However, the applicable statutory maximum sentence is 60 months.  The offense level is based in large part on the amount of loss attributed to

Defendant in the PSR, $51,781,491.82, in addition to an enhancement for obstruction of justice.  The PSR also recommends ordering restitution in the full amount of loss and imposing a fine commensurate with the Guidelines offense level.

Defendant challenges the information contained in the PSR for several reasons, including what knowledge he had, the theory of liability upon which he was convicted, whether he perjured himself, and the amount of loss from the tax fraud.

## II.  STANDARD

Pursuant to Federal Rule of Criminal Procedure 32, a court "must–for any disputed portion of the presentence report or other controverted matter–rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing."  Fed. R. Crim. P. 32(i)(3)(B).  Thus, the district court must make an independent determination of each disputed fact by a preponderance of the evidence.  *United States v. Gates*, 461 F.3d 703, 710 (6th Cir. 2006) ("The comment to U.S.S.G. § 6A1.3(a) states that the commission believes that a preponderance of the evidence standard is appropriate in order to meet due process requires for sentencing."); *United States v. Tarwater*, 308 F.3d 494, 517 (6th Cir. 2002) ("Because the purpose of the rule is to ensure that sentencing is based on reliable facts found by the court itself after deliberation, a court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.") (citing *United States v. Corrado*, 227 F.3d 528, 540 (6th Cir. 2000)).

The United States Sentencing Guidelines ("U.S.S.G.") further elaborate regarding Rule 32: "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probably accuracy."  U.S.S.G. § 6A1.3(a) (2000).  While the Federal Rules of Evidence do not generally apply to sentencing proceedings, U.S.S.G. § 6A1.3 establishes "a minimum indicia-of-reliability standard that evidence must meet in order to be admissible in Guidelines sentencing proceedings."  *United States v. Moncivais*, 492 F.3d 658, 658 (6th Cir. 2007).  The Sixth Circuit has stated that the "minimum indicia-of-reliability" standard is "a relatively low hurdle," *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995), in which the Government is required to prove matters to be used in sentencing by a preponderance of the evidence, *United States v. Abdelsalam*, 311 F. App'x 832, 845 (6th Cir. 2009) (quoting U.S.S.G. § 6A1.3 Commentary).  The Sixth Circuit reviews district court determinations in this regard only for clear error.  *Greene*, 71 F.3d at 235.

### III.  DISCUSSION

In his "Memorandum," Defendant raised ten objections to the PSR.  Several of the objections object to the narrative, theory and scope of conspiracy liability, and whether Defendant is subject to a sentencing enhancement for perjury.  Several others

4

relate to the amount of loss from the tax fraud conspiracy and the resulting Guidelines

offense level.[2]

## A.  Objection # 1

Defendant's first objection primarily disputes whether (1) a meeting took place at

which SES executives discussed (2) intentionally filing false tax returns on behalf of

SES and associated companies.  Specifically, Defendant objects to the language in

paragraph 13, lines 1-3 and 11-14, which states:

> In the fall or early winter of 1999, Dennis Lambka announced at a meeting
> in which Brian Lambka, [Defendant], and [Ron] Bray were present that
> based on SES's bleak financial situation, the company was going to begin
> filing false tax returns. . . .
>
> In particular, false (941 forms) federal tax returns were filed by Dennis
> Lambka and Bray.  For each of the four corporations, fraudulent 941 tax
> forms were filed indicating that there w[ere] no payroll tax and withholding
> liabilities.  In reality, by the first quarter of 2001, the outstanding tax liability
> was $51,781,491.82.  [Defendant] assisted SES in securing the services
> of the law firm Latham and Watkins, in an effort to resolve the outstanding
> tax obligation.

(PSR ¶ 13, 1-3, 6-11.)  Defendant also disputes the inclusion of the following language

in the PSR:

> [Defendant] was aware of this scheme and failed to notify authorities of
> the fraud.

(PSR ¶ 13, 26-27.)

---

[2] Several of the objections also constitute reargument of Defendant's motion for
judgment of acquittal and motion for new trial, which the court resolved in its April 8,
2009 order.

5

Defendant argues that insufficient evidence was presented at trial to show that Defendant attended a meeting at which the filing of false tax returns was discussed and thus cannot be evidence of Defendant's participation in the conspiracy. (Def.'s Memo. at 3; PSR Def.'s Obj. # 1.) First, Defendant argues that there is not sufficient evidence that any such meeting occurred. In support of his position, Defendant points out that Dennis Lambka never testified at trial to a meeting, even though he testified that he had such discussions with all of the named individuals. (Def.'s Memo. at 3.) Defendant also points out that while David Carlesimo testified at trial to a meeting as detailed in the PSR, this testimony is inconsistent with Dennis Lambka's testimony as to the setting of the discussions and regarding who was present. (*Id.* at 3-5.) Defendant next argues that the testimony of Brian Lambka prior to trial showed that he could not remember any meeting at which the filing of fraudulent tax returns was discussed. (*Id.* at 5.) Defendant further argues that, in any case, any such discussion or meeting is immaterial to the determination of Defendant's responsibility as to the claimed loss amount. (*Id.* at 3.)

Second, Defendant argues in response to a Government argument that both Dennis Stout, the "tax manager" mentioned in the PSR, and Defendant were present during the meeting that the testimony of Janice Picklo, SES's tax manager, shows that only Dennis Lambka, not Dennis Stout, told Picklo to submit fraudulent tax returns. (*Id.*) Finally, in his "Memorandum," Defendant argues that the existence of a meeting is also used to hold Defendant account for his inaction and failure to notify authorities of the fraud, which cannot be the basis for conspiracy liability. (*Id.* at 2.)

6

In response, the Government argues that any inconsistencies between Dennis Lambka and Carlesimo's testimony are insignificant and that, indeed, their testimony indicates Defendant and Dennis Stout were both present while the filing of false tax returns was discussed.  (Gov't Resp. at 2-3.)

At trial Dennis Lambka testified:

Q:  And the purpose was to determine how much had been paid to the IRS and then prepare a return which indicated that was the amount owed, is that correct?

A:  Correct.

Q:  Now, did you discuss this determination with anyone else within the termination to engage in the course of conduct with anyone else within the SES firm?

A:  I did.

Q:  Would you tell the ladies and gentlemen of the jury with whom you discussed your determination to file the returns this way?

A:  There were several; Ronald Bray, the President, Dennis Stout, the then CFO, [Defendant], the Chief Legal Counsel, myself, Brian Lambka at some extent, to some extent, and David Carlesimo.

Q:  And this started in late 1999 or mid-1999?

A:  Actually earlier.

Q:  All right.  But the filing of these series of returns took place at approximately that point in time?

A:  Yes, this he [sic] did.

(D. Lambka Trial Tr. vol. II, 25:1-20, June 19, 2008.)  While Dennis Lambka did not specifically testify to a single meeting as described in the PSR, he did testify to discussing filing false tax returns with Bray, Stout, Brian Lambka, Carlesimo, and Defendant.  (*Id.*)  In addition, Carlesimo testified at trial:

Q:  Sir, and do you recall that in late 1999 a revenue agent by the name of David Hauenstein was trying to get SES to file Form 941s that were delinquent for several of its companies?

A:      Yes.

Q:      And do you recall participating in a meeting in which Dennis Lambka raised this topic?

A:      Yes.

Q:      And would you tell the ladies and gentlemen of the jury what Mr. Lambka said he was going to do in order to comply with Mr. Hauenstein's request?

A:      He was going to file the returns to match up what they had actually paid until they could actually do the return to see what they owed.

Q:      In other words, the return was going to say the amount owed and the amount paid were identical?

A:      Yes.

Q:      Were these returns going to be false then?

A:      Yes.

Q:      Now, was anyone else present when that conversation took place?

A:      Yes.

Q:      Who else was in the room?

A:      Ronald Bray, Dennis Lambka, Brian Lambka, Dennis Stout, Edward Fisher and myself, and Robert Berman.

(Carlesimo Trial Tr. vol. IX, 4:9-5:7, July 1, 2008.)

"'[T]estimonial evidence from a coconspirator may be sufficient to determine the amount of drugs for which another coconspirator should be held accountable.'" *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) (citing *United States v. Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004)). "The credited testimony of a single witness is sufficient to support factual findings by a preponderance of the evidence on sentencing, which will survive 'clear error' review, if that evidence bears more than a 'minimum indicium of reliability.'" *United States v. Reid*, 357 F.3d 574, 582 (6th Cir. 2004) (citing *United States v. Gessa*, 57 F.3d 493, 496 (6th Cir. 1995)). Moreover, the Sixth Circuit has stated that it "'afford[s] the district court's credibility determinations regarding

8

witness testimony great deference.'" *Jeross*, 521 F.3d at 570 (citing *United States v. Esteppe*, 483 F.3d 447, 452 (6th Cir. 2007)).

Sufficient evidence was provided at trial to show by a preponderance of the evidence that the Defendant attended or was involved in a meeting, or discussion, at which Dennis Lambka, David Carlesimo, Brian Labmka, Ron Bray, Dennis Stout, and Defendant were present, and where the participants discussed the filing of false tax returns based on the testimony of two witnesses at trial. *See Reid*, 357 F.3d at 582 (citing *Gessa*, 57 F.3d at 496). Both Dennis Lambka and Carlesimo testified to discussing Lambka's intent to file fraudulent tax returns, either during a "meeting" or some other type of "discussion." (D. Lambka Trial Tr. vol. II, 25:1-20; Carlesimo Trial Tr. vol. IX, 4:9-5:7.)

Defendant argues only that the testimony of Dennis Lambka and David Carlesimo was not exactly the same. The court, however, finds that the differences between the Dennis Lambka's testimony that he "discussed" filing the fraudulent tax returns and David Carlesimo's testimony of a "meeting" at which the same fraudulent tax returns were discussed and the precise attendance to be inconsequential differences. Meetings inevitably involve "discussions," and often matters that are "discussed" are discussed at something commonly understood as a "meeting." In addition, Dennis Lambka also testified at trial:

> Q:   And at this point in time in 1999 you were somewhat behind in the filing of these forms, is that correct?
> A:   That is correct.
> Q:   In fact, an IRS revenue officer had come on the scene and raised this very issue with you, is that correct?

9

> A:     Yes, did he [sic].
>
> Q:     Mr. Hauenstein?
>
> A:     Correct.
>
> Q:     And you had meetings to discuss remedying this situation, is that correct?
>
> A:     Yes, we did.
>
> Q:     And I believe you've indicated as a result of these meetings in the cases of some employees you backed out taxes that you felt the employer had not paid to you, is that correct?
>
> A:     That is correct.

(D. Lambka Trial Tr. vol. II, 13:12-14:11.)  Both witnesses testified to "meetings" at which the filing of fraudulent tax returns was discussed.  The testimony of the two witnesses is not mutually exclusive; it is consistent.

In addition, the witnesses' testimony is consistent in several other ways.  Both witnesses agree as to the subject matter of the talks: the filing of intentionally fraudulent tax returns.  (D. Lambka Trial Tr. vol. II, 25:1-20; Carlesimo Trial Tr. vol. IX, 4:9-5:7.)  Both witnesses agree as to the timing of the meetings or conversations, in late 1999.  (*Id.*)  The witnesses' testimony is consistent also as to the manner in which the fraudulent tax returns would be filed, namely by stating that the amount owed and the amount paid were identical.  (*Id.*)  Finally, the witnesses testified consistently that discussions of the fraudulent tax returns came in response to visits of IRS revenue officer David Hauenstein to SES.  (D. Lambka Trial Tr. vol. II, 13:12-14:11; 25:1-20; Carlesimo Trial Tr. vol. IX, 4:9-5:7.)

Finally, contrary to what Defendant stated in his "Memorandum," Brian Lambka merely told investigators that, while he remembered meetings with SES executives, he could not recall specific meetings regarding tax returns, although he knew that

delinquent tax returns were eventually filed. (Def.'s Memo. Ex. B.)  Furthermore, Picklo

testified directly that she prepared fraudulent tax returns for SES at the request of both

Dennis Lambka and Dennis Stout.  (Picklo Trial Tr. vol. V, 42:24-25, June 24, 2008.)

Finally, to the extent that Defendant argues that no liability can exist on the basis of

Defendant's failure to notify the authorities of the fraud, this is not the theory upon which

the jury convicted, and the court will more fully address this question in Objection # 3,

where Defendant raises this specific objection.[3]  Therefore, the court will overrule

Objection # 1.

### B.  Objection # 2

Defendant next objects to paragraph 13, lines 6-11 of the PSR, arguing that (1)

Defendant did not know that the tax returns were intentionally fraudulent, rather than the

result of errors in computer software and accounting methods, and that (2) Defendant

therefore could not be responsible for concealing the fraud in his communications with

Latham and Watkins.  The portion of the PSR to which Defendant objects states:

> In particular, false (941 forms) federal tax returns were filed by Dennis
> Lambka and Bray.  For each of the four corporations, fraudulent 941 tax
> forms were filed indicating that there w[ere] no payroll tax and withholding
> liabilities.  In reality, by the first quarter of 2001, the outstanding tax liability
> was $51,781,491.82.  [Defendant] assisted SES in securing the services
> of the law firm Latham and Watkins, in an effort to resolve the outstanding
> tax obligation.

(PSR ¶ 13, 6-11.)  Defendant further objects to the language in the PSR that:

---

[3]Which Defendant raises in several other objections, in addition to making this
argument the sole issue in Objection # 3.

> Dennis Lambka, Bray, and [Defendant] agreed that [Defendant] would present to Latham and Watkins, an explanation that the computer software and people within the accounting department were the major blame for the tax deficiency. [Defendant] knew this information was inaccurate and that in reality, SES intentionally underpaid the companies' income[4] taxes.

(PSR ¶ 13, 11-15.)  Defendant chiefly argues that there is no support that Defendant knew that SES's tax deficiency was intentional and that Defendant nonetheless conveyed to Latham and Watkins that computer software and accounting issues were to blame for the deficiencies.  (Def.'s Memo. at 6.)  Defendant states that Dennis Lambka testified that software and accounting problems were to blame for the tax deficiency. (PSR Def.'s Obj. # 2.)  Defendant argues that many others at SES knew about the underpayment of taxes, including Widgren, Wyderko, Barbara Urlaub, and Carlesimo, as demonstrated by testimony and trial Exhibit 593, which is a report by Wyderko on the amount of the tax liability, entitled "Tax Overview."  (*Id.*)  Defendant also argues that Janice Picklo, SES tax manager, was told by Dennis Lambka not to inform anyone about the underpayments made at his direction, and that therefore she could not have told Defendant about the intentional underpayment of taxes.  (*Id.* at 8-9.)  Finally, Defendant states that there is no affirmative evidence that Defendant knew that SES executives were deliberately underpaying taxes.

Defendant contends that the Government's proffered support, trial Exhibit 105, an email and an attached document sent by Defendant to SES's outside counsel Grigsby to explain the causes of the tax liabilities ("Causes Document"), does not

---

[4] As Defendant correctly notes, this should state "employment" taxes.  However, this clerical error is not relevant to the court's sentencing determination.

12

demonstrate that the Defendant wrote the email, and the Causes Document to explain SES's tax liabilities, in furtherance of the conspiracy because it does not blame the entire amount of the tax deficiency on software and accounting problems and leaves open the possibility that the taxes were deliberately underpaid.  (Def.'s Memo. at 7.) Defendant also contends that trial Exhibit 106, an email response from a CPA at Deloitte and Touche, Bruce Gribbens, and subsequent email exchange, makes evident that the Causes Document was never given to the IRS such that Defendant's involvement with it cannot represent participation in the conspiracy.  (*Id.* at 7-8.) Gribbens also testified that Dennis Lambka, not Defendant, prepared the Causes Document.  (*Id.* at 8.)

In response, the Government states that the Causes Document, sent to Grigsby by Defendant, purported to explain all of the reasons for the tax deficiency as being attributable to software and accounting problems, and nowhere stated that any of the tax deficiency was the result of deliberate underpayment.  (Gov't Resp. at 4.)  In addition, the Government argues that Dennis Lambka's testimony supports the narrative in the PSR that Defendant's role in the conspiracy was to convey to Latham and Watkins that software and accounting issues caused the tax deficiency.  (*Id.*)  Dennis Lambka testified:

> Q:   And I believe I asked you who the point person was for interfacing
>       between SES and Latham & Watkins.  Do you recall that question.
> A:   I do.
> Q:   And what was your answer to that question?
> A:   [Defendant].

Q:      And did you and [Defendant] in or about this time, and I'm talking
        about April and May of 2000, have any discussions about what you
        would tell Latham & Watkins about the nature of the tax liability?

A:      We did.

Q:      And were there any other people present during these discussions?

A:      Dennis Stout, Ronald Bray, myself.

Q:      And what did you did you discuss that the point in time?

A:      We were going to take the strategy that the systems and the
        software and the people within the accounting department were to,
        the major blame, for the deficiency within the taxes, and that
        [Defendant] would convey this to Latham & Watkins.

(D. Lambka Trial Tr. vol. II, 40-41.)

    The evidence at trial supports, by a preponderance of the evidence, that

Defendant knew that SES and associated companies' tax returns were intentionally

falsified, and Defendant participated in the conspiracy to falsify the tax returns by

conveying to Grigsby that the tax deficiency resulted from software and accounting

problems rather than deliberate underpayment.  Dennis Lambka testified directly to this

at trial.  *See United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008) ("'[T]estimonial

evidence from a coconspirator may be sufficient to determine the amount of drugs for

which another coconspirator should be held accountable.'" ) (citing *United States v.

Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004)).  Both Lambka and Carlesimo testified

that Defendant was present during discussions at which the filing of intentionally

fraudulent tax returns was discussed.  (D. Lambka Trial Tr. vol. II, 13:12-14:11; 25:1-20;

Carlesimo Trial Tr. vol. IX, 4:9-5:7.)  The testimony of these two witnesses is further

corroborated by Defendant's interaction with Grigsby in which he emailed Grigsby the

14

"Causes Document," which attributes the tax deficiency at SES to software and accounting problems.

The arguments Defendant proffers in opposition to this evidence are not sufficient to contradict or diminish the testimony of Dennis Lambka and the other evidence presented at trial. Whether the Causes Document was given to the IRS does not matter; Defendant's role in the conspiracy was to conceal from Grigsby the nature of the tax deficiency. Concealing this from SES's outside counsel would ensure that the reason for the tax deficiency was also concealed from the IRS. In addition, even if Defendant did not himself initially draft the Causes Document, he sent it to Grigsby and represented it to be what it claimed to be: a document detailing the reasons for SES's tax deficiency. Finally, it is not relevant here whether others at SES knew that the real reason for the tax deficiency was deliberate underpayment or what Picklo was instructed. This does not negate Defendant's role in the conspiracy: Defendant knew the tax returns were intentionally falsified, and he represented otherwise to Grisgby. Therefore the court will overrule this objection.

## C.  Objection # 3

Defendant also objects to paragraph 13, lines 16 to 23 of the PSR.[5]  In particular,
Defendant objects to the statement "[Defendant] was aware of this scheme and failed to
notify authorities of the fraud" and presents case law in support of his objection.  (Def.'s
Memo. at 9-11.)  Defendant avers that this statement appears to convict Defendant for
Defendant's failure to act, even though legal liability cannot be premised on a failure to
act or failure to report fraud to the authorities.  (Id.)  In addition, Defendant identifies that
witness testimony from Dennis Lambka, Larabell, and John Candela's trial testimony
shows that Defendant, in fact, "strenuously objected" to certain fraudulent actions being
performed by SES employees.  (Id. at 11; PSR Def.'s Obj. # 3.)

In response, the government argues that the statement that "[Defendant] was
aware of this scheme and failed to notify authorities of the fraud" (PSR ¶ 13, 26-27), is
supported by the record in the case, but is not a theory of liability, merely part of the
PSR's narrative of the case (Gov't Resp. at 5).

_____

[5] The portion of the PSR to which Defendant objects states:

Also, [Defendant] was aware that Dennis Lambka instructed SES's tax
manager to provide fraudulent figures on other IRS 941 forms, thus
making it appear as if the tax obligation was balanced when in reality there
was an enormous obligation.  Additionally, Dennis Lambka devised a
scheme to alter SES's accounting software.  Dennis Lambka instructed
SES employees to reclassify some previously terminated client companies
and classify them as a co-employer.  By simply reclassifying some of the
companies, SES's accounting system made it appear as if the client
company was responsible for paying the IRS and not SES.

(PSR ¶ 13, 16-22.)

16

As Defendant notes in his "Memorandum," this argument, in various forms, has been the substance of several prior motions by Defendant.  Nonetheless, there is adequate factual support for the inclusion of the material to which Defendant objects in the PSR.  Defendant does not dispute the factual allegations presented in this section of the PSR, he merely asserts, "[Defendant] also objected that lines 16-22 do not take into account what was characterized at trial as tax back-outs and that there was evidence at trial that Fisher objected.  Ernst & Young gave an opinion to SES in 1997 that back-outs *to the extent of a client's liability* are permissible as a form of setoff."  (Def.'s Memo. at 11 (emphasis in original).)

Indeed, the court addressed this question in its April 8, 2009 order in which it found that, based on the evidence presented at trial, a jury could have found that Defendant joined the conspiracy regardless of whether he failed to inform law enforcement authorities about the fraud.  As the court stated in its April 8, 2009 order:

> While "proof of a formal agreement is not necessary to establish a conspiracy," *United States v. Barger*, 931 F.2d 359, 369 (6th Cir. 1991), more is necessary than evidence showing "[m]ere knowledge or approval, without participation." *United States v. Bostic*, 480 F.2d 965, 968 (6th Cir. 1973).  However, "'[i]t is only necessary that a defendant know of the conspiracy, associate himself with it, and knowingly contribute his efforts in its furtherance.'"  *Barger*, 931 F.2d at 369 (quoting *United States v. Luxenberg*, 374 F.2d 241, 250 (6th Cir. 1967)).  In addition, "'[a] conspiracy may be inferred from circumstantial evidence that can reasonably be interpreted as participation in the common plan.'"  *Id.* at 369 n.6 (quoting *United States v. Bavers*, 787 F.2d 1022, 1026 (6th Cir. 1985)).

(4/8/09 Order at 4.)  Defendant was not tried and convicted on the basis that he did not report the ongoing fraud at SES; rather, Defendant was tried and convicted by a jury on

17

the basis that he knew about the Back-Out Plan to file false tax returns and defraud the IRS, that he hired Grigsby as outside counsel to represent SES, and that Defendant concealed from Grigsby that SES executives had intentionally filed false tax returns. In addition, the jury found that Defendant had conspired to commit tax fraud in violation of the law, regardless of any advice given to SES about the permissibility of tax back-outs. Defendant "[knew] of the conspiracy, associate[d] himself with it, and knowingly contribute[d] his efforts in its furtherance.'" *Barger*, 931 F.2d at 369 (quoting *Luxenberg*, 374 F.2d at 250).

What Defendant asserts is evidence that he objected to the filing of the false tax returns actually constitutes evidence that Defendant objected to the open and obvious manner in which the fraudulent tax returns were being prepared and filed. Dennis Lambka and Carlesimo testified that Defendant was angry that so many SES employees were working on the false tax returns, not angry that the plan had been implemented.[6] (D. Lambka Trial Tr. vol. II 32; Carlesimo Trial Tr. vol. IX, 7.)

Finally, with respect to the PSR's narrative, it is nothing more than that, a narrative of the facts. Defendant does not contest the fact that he did not notify authorities. Furthermore, this fact alone does not create liability for Defendant, or factor in his sentencing. *See* Fed. R. Crim. P. 32(i)(3)(B) (A court "must–for any disputed

---

[6] Candela did testify at trial that Defendant was angry following a discussion with Dennis Lambka regarding the document of SES's "co-employers." (Candela Trial Tr. vol. VIII. 19-22, June 26, 2008.) However, this does not appear to be regarding the same discussions described by Lambka and Carlesimo regarding the false tax returns; nor does it contradict Lambka's or Carlesimo's testimony at trial regarding Defendant's knowledge and actions. (*Id.*)

portion of the presentence report or other controverted matter–rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing.") Accordingly, the court will overrule this objection to the PSR.

### D.  Objections ## 4-5

Defendant makes two objections to the claim in the PSR that he perjured himself during trial and the resulting increase in his offense level for the obstruction of justice adjustment.  First, paragraph 14 of the PSR states:

> During trial, [Defendant] appears to have perjured himself.  In particular, [Defendant] denied being present at the meeting with Dennis Lambka, Brian Lambka, and Bray, when Dennis Lambka announced his intention to have SES begin filing false tax returns.  Additionally, [Defendant] testified he was unaware SES's tax liability was intentional, rather than a book keeping error.

(PSR ¶ 14.)  Second, Defendant objects to paragraph 24 of the PSR, which recommends a two-level increase in the offense level pursuant to U.S.S.G. § 3C1.1(A) for obstruction of justice because Defendant "willfully obstructed or attempted to obstruct or impede the administration of justice with respect to the prosecution of the instant offense, as the defendant provided materially false information at the criminal jury trial."  (PSR ¶ 24.)  Defendant argues that this contention is based only on the following testimony by Defendant at trial:

> Q:    You don't recall being present at a meeting when Mr. Lambka told
>         you that he was going to file intentionally false returns?
> A:    I do not.

19

(Def.'s Trial Tr. vol. VIII, 16, June 27, 2008.)  Defendant further argues that the testimony does not satisfy the standard required for imposing a two-level increase under U.S.S.G. § 3C1.1(A); the Government's primary witness, Dennis Lambka, did not testify in direct contradiction to this testimony; and there was no testimony from Grigsby to show that Defendant perjured himself.  (Def.'s Memo. at 12-13.)  Finally, Defendant again raises earlier arguments regarding whether any meeting, as described in the PSR, occurred and whether Defendant knew that the tax returns were intentionally falsified.  (PSR Def.'s Obj. ## 4-5.)

In response, the Government argues, first, that Defendant's testimony that he cannot recall being present at a meeting when Dennis Lambka told him that he planned to intentionally file false tax returns is contradicted by the trial testimony of both Dennis Lambka and David Carlesimo.  (Gov't Resp. at 6.)  Second, the Government contends that evidence at trial did support the statement that Defendant was aware that "SES's tax liability was intentional, rather than a book keeping error" (PSR ¶ 14) based on Defendant's own testimony and the testimony of Carlesimo and Barbara Urlaub.  (Gov't Resp. at 7.)

"Before a § 3C1.1 enhancement may be applied, the government must prove by a preponderance of the evidence that a defendant willfully obstructed, or attempted to obstruct, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense, and that the obstructive conduct related to the offense of conviction and relevant conduct."  *United States v. Isom*, 72 F. App'x 372, 374-75 (6th Cir. 2003).  One common reason for courts to impose the obstruction of

20

justice adjustment is that defendant offers perjured testimony at trial.  The Supreme

Court has explained that the importance of "[t]he requirement of sworn testimony,

backed by punishment for perjury, is as much a protection for the accused as it is a

threat.  All testimony, from third-party witnesses and the accused, has greater value

because of the witness'[s] oath and the obligations or penalties attendant to it."  *United

States v. Dunnigan*, 507 U.S. 87, 97 (1993).

  "Perjury is 'false testimony concerning a material matter with the willful intent to

provide false testimony, rather than as a result of confusion, mistake, or faulty

memory.'" *United States v. Cork*, 69 F. App'x 733, 740 (6th Cir. 2003) (quoting *United

States v. Dunnigan*, 507 U.S. 87, 94 (1993)).  "[A] district court must review the

evidence and make independent findings necessary to establish a willful impediment to

or obstruction of justice, or an attempt to do the same, under the perjury definition we

have set out." *Dunnigan*, 507 U.S. at 95.  "[T]he district court must specify which

statements were perjurious.  When specifying perjurious statements, the district court

does not need to recite the perjury line by line, so long as its findings encompass the

factual predicates necessary for a finding of perjury."  *Isom*, 72 F. App'x at 375 (internal

citations and quotation marks omitted). In addition, a district court should "evaluate [a]

defendant's testimony and statements in a light most favorable to the defendant."

*United States v. Thomas*, 272 F. App'x 479, 487 (6th Cir. 2008) (citing *United States v.

Head*, 927 F.2d 1361, 1372 (6th Cir. 1991)).

  Defendant committed perjury regarding at least two issues material to the

conviction: (1) Defendant denied being present during a discussion with Dennis

Lambka, Carlesimo, and others where the filing of fraudulent tax returns was discussed, and (2) Defendant denied knowledge that SES tax returns were intentionally falsified rather than being incorrect due to accounting and computer software errors.  At trial, Defendant testified to the following:

> Q:    What would you have done if you had heard that the president of the company on behalf of SES was going to file intentionally false returns?
>
> A:    I would have been required to talk to the president of the company and to instruct him that would be an illegal activity.  And absent that, to also talk to the other owners of the company to do the same.
>
> Q:    And is it your testimony that you were never a participant in a conversation where that statement was made?
>
> A:    No, sir.
>
> Q:    You were never in a room with Brian Lambka, Dennis Lambka and Dennis Stout where that statement was made?
>
> A:    No, sir.
>
> Q:    Dave Carlesimo was never in the room when that same statement was made?
>
> A:    Not that I recall, no, sir.
>
> Q:    Well, you would recall it?
>
> A:    Well, I'm not sure what you're asking.  Was David Carlesimo in the same room that I was in, yes, David Carlesimo was in the same room.
>
> Q:    Was David Carlesimo in a room with you when Mr. Lambka –
>
> A:    – No.
>
> Q:    Said he was going to file intentionally false tax returns?
>
> A:    No.

(Def.'s Trial Tr. vol. Xx 16:23-17:22.)  Defendant stated that he never attended a meeting with Dennis Lambka and Carlesimo where they discussed filing false tax returns.  (*Id.*)  However, both Lambka and Carlesimo testified that Defendant did attend

22

meetings, or discussions, at which they agreed to intentionally file false tax returns.  (D. Lambka Trial Tr. vol. II, 13:12-14:11; 25:1-20; Carlesimo Trial Tr. vol. IX, 4:9-5:7.)

Furthermore, testimony and evidence at trial showed that Defendant knew that SES's tax returns were being intentionally falsified because this was announced in Defendant's presence, even though Defendant testified to the opposite.  (*Id.*) Defendant testified at trial that "I did not know that [Dennis Lambka and Ron Bray] had filed false tax returns intentionally."  (Def.'s Trial Tr. vol. VIII, 48.)  However, Dennis Lambka and Carlesimo both testified to Defendant's presence during discussions regarding filing false tax returns.  (D. Lambka Trial Tr. vol. II, 13:12-14:11; 25:1-20; Carlesimo Trial Tr. vol. IX, 4:9-5:7.)  Moreover, Defendant's anger when he found out how many employees were preparing the falsified tax returns demonstrates that Defendant did indeed have knowledge of the falsified tax returns.  (D. Lambka Trial Tr. vol. II 32; Carlesimo Trial Tr. vol. IX, 7.)  Dennis Lambka also testified at trial that Defendant agreed to "take the strategy that the systems, the software and the people within the accounting department were to the major blame for the deficiency within the tax taxes and that [Defendant] would convey this to [Grigsby]" to conceal the intentionally falsified tax returns.  (D. Lambka Trial Tr. vol. II, 40-41.)  Moreover, Defendant's argument that Grigsby did not testify to Defendant's perjury is not persuasive because Defendant's role in the conspiracy was to hide the intentional nature of the falsified tax returns from Grigsby.  (D. Lambka Trial Tr. vol. II, 40-41.)

Finally, Defendant's perjurious statements, in denying his presence during discussions regarding the intentional filing by SES executives of falsified tax returns and

23

his knowledge of the intentional nature of the false tax returns, directly "relate[] to the offense of conviction and relevant conduct." *Isom*, 72 F. App'x at 375.  Therefore, the court will overrule Defendant's objections regarding the obstruction of justice adjustment.

### E.  Objections ## 6-8

Defendant also makes three objections in which Defendant asserts that the PSR does not give any factual support for the amount of loss stated in the PSR, $51,781,491.82, that it calculates for the purposes of ascertaining the relevant offense level from the Guidelines.  Defendant also argues that he should only be sentenced in accord with the loss amount that was reasonably foreseeable to him, as required by U.S.S.G. §1B1.3 n.2 and that occurred after he joined the conspiracy.  ("The conduct of others that was both in furtherance of, and reasonably foreseeable in connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision.").  Defendant argues that he should not be responsible for any of the loss amount because his job responsibilities did not include paying employment taxes, and therefore he cannot be held liable for the underpayment of employment taxes.  On this basis, Defendant argues that the court should sentence him in accord with his level of culpability in the conspiracy, with an offense level of 10 as provided by U.S.S.G. § 2T1.9 for conspiracy to impede, impair, obstruct, or defeat tax, rather than that of 25, as calculated in the PSR for conspiracy under § 2X1.1, "which directs the application of a guideline from the substantive offense, which in this case is Tax Evasion.  The guideline for a violation of this offense is located at § 2T1.1(a)(1) which references the Tax Table

24

located at § 2T4.1." (PSR ¶ 20.) The Tax Table then generates an offense level on the basis of amount of loss.

In addition, Defendant argues that Dennis Lambka stated that the tax liability was around $18 million, that the Government's change in loss amount calculation shows how unreliable their calculations are, and that Candela, Wyderko, and Widgren testified to the poor financial records that SES maintained such that any loss amount calculation will be difficult. Therefore, Defendant argues the court is unable to make any determination regarding the amount of loss.

The Government, in its response, decreases the amount of loss they assert is attributable to Defendant to $25,229,174.83. (Gov't Resp. at 8-9.) The Government argues that while Defendant can only be sentenced in accord with actions of others "reasonably foreseeable" to him, this includes all "criminal activity jointly undertaken by the defendant." (*Id.*) The recalculated amount of loss by the Government reflects Defendant's responsibility only for the amount of loss generated after he joined the conspiracy in late 1999; however, the Government argues that after Defendant joined the conspiracy, SES executives continued to file false tax returns for prior years. (*Id.*) The documents used by the Government to substantiate this amount are the documents that were attached to the indictment, stating without further identifying information or support that they are a "Computation of Unreported and Unpaid Employment Taxes" from SES.[7] (Gov't Resp. Ex. 14.) The Government acknowledges that the lower

---

[7] The Government also states that it is prepared "to present brief testimony (fifteen minutes) from an agent explaining the methodology used in arriving at the revised figure" at the sentencing hearing. (Gov't Resp. at 9.)

25

amount of loss would correspondingly reduce Defendant's offense level to 24 and generate a sentencing range of 51 to 60 months.

First, Defendant's sentence is correctly calculated pursuant to U.S.S.G. §§ 2X1.1 and 2T1.1 for conspiracy for tax evasion, rather than U.S.S.G. § 2T1.9 for conspiracy to impede, impair, obstruct, or defeat tax.  Appendix A of the Guidelines provides that convictions pursuant to 18 U.S.C. § 371 that the appropriate Guidelines are §§ 2A1.5, 2C1.7, 2T1.9, 2K2.1 (if a conspiracy to violate 18 U.S.C. § 924(c)), 2X1.1 and states "[i]f more than one guideline section is reference for the particular statute, use the guideline most appropriate for the offense conduct charged in the court of which the defendant as convicted."  Furthermore, § 2T1.9 itself directs the application of § 2T1.1 for individuals in Defendant's position such that application of § 2T1.1 is "most appropriate" in this case.  In any event, whether the court were to start its Guideline calculation at § 2T1.9 or § 2T1.1, § 2T1.1 would be applied.

Second, "The amount of loss attributable to the defendant is determinated according to his relevant conduct as defined under U.S.S.G. § 1B1.3. . . . If the offense involved a 'jointly undertaken criminal activity,' 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity' are considered relevant conduct."  *United States v. Hoy*, No. 95-3698, 1996 WL 465033, at *4 (6th Cir. Aug. 13, 1996) (citing U.S.S.G. § 1B1.3(a)(1)(B)).  Section 1B1.3 n.2 further states that "[a] defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct."  U.S.S.G. § 1B1.3 n.2.  "In calculating the sentence, the court

26

must determine the amount of loss by a preponderance of the evidence.  Because the court need only make a reasonable estimate of the loss, however, the court's loss determination is entitled to appropriate deference."  *United States v. Mason*, 294 F. App'x 193, 202 (6th Cir. 2008) (internal citations and quotation marks omitted) (finding the total benefits received as stated in the victim-impact statement, and no alternative method of calculation offered, meets the preponderance of the evidence standard).

The court will decline to rule on the amount of loss and the associated objections at this time.  The court will receive evidence from the Government and Defendant at an evidentiary hearing in order to make a determination based upon a preponderance of the evidence.

### F.  Objections ## 9-10

Finally, Defendant objects to the calculation of restitution in paragraph 63 and the calculation of the fine in paragraph 61.  Defendant maintains that because his offense level should be 10 rather than 25, based on the recalculation of amount of loss, his restitution and fine should reflect that offense level.  (Def.'s Memo. at 20.)  Defendant argues that tax fraud is not included in the offenses listed in 18 U.S.C. §§ 3663 and 3663A, and therefore the court cannot order restitution.  In addition, Defendant argues that pursuant to 18 U.S.C. § 3664(h) liability for restitution should be required in proportion to the economic circumstances of the defendant and his level of involvement in the conspiracy.  (*Id.*)

Contrary to Defendant's assertions, restitution in accord with the amount of loss is appropriate under 18 U.S.C. § 3663A, which requires that the sentencing court order

27

restitution if "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The IRS can be considered a victim for purposes of ordering restitution under this statute. *See, e.g.*, *United States v. Miller*, 557 F.3d 919 (8th Cir. 2009). Section 3663A(d) requires that the court order restitution in accord with 18 U.S.C. § 3664.

Under 18 U.S.C. § 3664, the burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." 18 U.S.C. § 3664(e). The court is then required to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant," 18 U.S.C. § 3664(f)(1)(A); however, once the court has made this determine, it must set the manner and schedule of repayment in consideration of the defendant's financial situation, 18 U.S.C. § 3664(f)(2). Additionally, "[i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

The fine assessed is based on the offense level applicable to Defendant. U.S.S.G. § 5E1.2(a) ("The court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine.").

28

Because the court will determine the amount of loss and correct offense level at the sentencing hearing, the court will also decline to rule on the objections regarding restitution and appropriate fine until it has made the requisite prior determinations.

### III.  CONCLUSION

For the reasons stated above, IT IS ORDERED that the objections contained in Defendant's "Memorandum in Support of Defendant's Guideline Objections," [Dkt. # 112] are OVERRULED IN PART, and the court DECLINES TO RULE IN PART. Objections ## 1-5 are OVERRULED.  The court will hear evidence regarding the amount of loss at the sentencing and rule on Objections ## 6-10 following the presentation of that evidence.

IT IS FURTHER ORDERED that the court will conduct an evidentiary hearing on **August 25, 2009 at 2:00 p.m.** on the issue of amount of loss.


                                           S/Robert H. Cleland
                                          ROBERT H. CLELAND
                                          UNITED STATES DISTRICT JUDGE


Dated:  August 4, 2009


I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, August 4, 2009, by electronic and/or ordinary mail.

                                           S/Lisa Wagner
                                          Case Manager and Deputy Clerk
                                          (313) 234-5522


S:\Cleland\JUDGE'S DESK\C2 ORDERS\06-20415.FISHER.Order.Deny.Objections.PSR.ljd.wpd