**UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                         Case No. 06-20415

EDWARD W. FISHER,

    Defendant.

_____/

**OPINION AND ORDER OVERRULING DEFENDANT'S
"GUIDELINE OBJECTIONS" AND SCHEDULING A SENTENCING HEARING**

Pending before the court is Defendant Edward W. Fisher's "Guideline Objections" to the Presentence Report ("PSR"), filed April 17, 2009. Defendant also appended his objections to the PSR. The Government filed a response on May 19, 2009. On August 4, 2009, the court issued an "Opinion and Order Overruling in Part Defendant's 'Guideline Objections,' Declining to Rule on the Objections in Part, and Scheduling an Evidentiary Hearing." On August 25, 2009, and continued to August 27, 2009, the court conducted an evidentiary hearing on the amount of loss for which Defendant is held liable pursuant to the United States Sentencing Guidelines ("Guidelines"). For the reasons stated below, the court will overrule Defendant's pending Objections ## 6-10 and schedule a sentencing hearing.

## I.  BACKGROUND[1]

Defendant Edward W. Fisher was charged with two counts of conspiracy to commit fraud.  Following Defendant's trial, a jury convicted Defendant of count one of the indictment: conspiracy to defraud the Internal Revenue Service ("IRS"), 18 U.S.C. § 371. On April 8, 2009, the court denied Defendant's motion for judgment of acquittal and motion for new trial because the evidence presented at trial was sufficient to uphold the jury's guilty verdict, and Defendant did not show that cumulative error at trial rendered his trial fundamentally unfair.

Defendant served as an attorney for Simplified Employment Services, Inc. ("SES") from 1994 to 2001.  SES was a professional employment organization, which administered, through its subsidiaries, many of the personnel and human resources functions of its client companies, including issuing employee pay checks and remitting employment taxes to the IRS.  In 1997, executives at SES began to conspire to file false and understated tax returns.  In addition, the conspirators falsified SES's relationship with clients, sometimes termed "co-employers," in an attempt to conceal SES's tax liabilities ("Back-Out Plan").  Defendant was alleged to have joined the conspiracy by late 1999.  Some evidence presented at trial indicated that Defendant may have generated the idea for the Back-Out Plan as early as 1997.  (D. Lambka Trial Tr. vol. II, 30, June 19, 2008.)  On May 9, 2000, Defendant retained attorney McGee Grigsby, of the law firm Latham & Watkins, LLP, as outside counsel on behalf of SES.  Grigsby's

---

[1] Much of the background section is taken from the court's April 8, 2009 "Opinion and Order Denying Defendant's Motion for Judgment of Acquittal and Denying Defendant's Motion for New Trial."

involvement was to be part of an SES plan, the Government charged, to conceal the true cause of the tax liability from the IRS.

Subsequent to Defendant's conviction, the probation department prepared a presentence report. In the PSR, the probation officer recommended a total offense level of 25 and criminal history category I, which results in sentencing range of 57 to 71 months. U.S.S.G. § 5G1.1(c). However, the applicable statutory maximum sentence is 60 months. The offense level is based in large part on the amount of loss attributed to Defendant in the PSR, $51,781,491.82, in addition to an enhancement for obstruction of justice. The PSR also recommends ordering restitution in the full amount of loss and imposing a fine commensurate with the Guidelines offense level.

Defendant challenged the information contained in the PSR for several reasons, including what knowledge he had, the theory of liability upon which he was convicted, whether he perjured himself, and the amount of loss from the tax fraud. In its August 4, 2009 order, the court overruled all of the objections except those pertaining to amount of loss. On August 25, 2009 and August 27, 2009, the court conducted an evidentiary hearing as to the amount of loss, and the court's findings are provided below.

## II. STANDARD

Pursuant to Federal Rule of Criminal Procedure 32, a court "must–for any disputed portion of the presentence report or other controverted matter–rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B). Thus, the district court must make an independent

determination of each disputed fact by a preponderance of the evidence. *United States v. Gates*, 461 F.3d 703, 710 (6th Cir. 2006) ("The comment to U.S.S.G. § 6A1.3(a) states that the commission believes that a preponderance of the evidence standard is appropriate in order to meet due process requires for sentencing."); *United States v. Tarwater*, 308 F.3d 494, 517 (6th Cir. 2002) ("Because the purpose of the rule is to ensure that sentencing is based on reliable facts found by the court itself after deliberation, a court may not merely summarily adopt the factual findings in the presentence report or simply declare that the facts are supported by a preponderance of the evidence.") (citing *United States v. Corrado*, 227 F.3d 528, 540 (6th Cir. 2000)).

The United States Sentencing Guidelines ("U.S.S.G.") further elaborate regarding Rule 32: "[i]n resolving any dispute concerning a factor important to the sentencing determination, the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probably accuracy." U.S.S.G. § 6A1.3(a) (2000). While the Federal Rules of Evidence do not generally apply to sentencing proceedings, U.S.S.G. § 6A1.3 establishes "a minimum indicia-of-reliability standard that evidence must meet in order to be admissible in Guidelines sentencing proceedings." *United States v. Moncivais*, 492 F.3d 658, 658 (6th Cir. 2007). The Sixth Circuit has stated that the "minimum indicia-of-reliability" standard is "a relatively low hurdle," *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995), in which the Government is required to prove matters to be used in sentencing by a preponderance of the evidence, *United States v. Abdelsalam*, 311 F. App'x 832, 845 (6th Cir. 2009)

(quoting U.S.S.G. § 6A1.3 Commentary). Moreover, "'hearsay is permissible at a sentencing hearing so long as it has some minimum indicia of reliability.'" *United States v. Richardson*, 74 F. App'x 565, 570 (6th Cir. 2003) (quoting *United States v. Darwich*, 337 F.3d 645, 656 (6th Cir. 2003)). Finally, the Sixth Circuit reviews district court determinations in this regard only for clear error. *Greene*, 71 F.3d at 235.

### III. DISCUSSION[2]

In his "Memorandum," Defendant raised ten objections to the PSR. Several of the objections objected to the narrative, theory and scope of conspiracy liability, and whether Defendant is subject to a sentencing enhancement for perjury. The court addressed these in its order of August 4, 2009. The court will address the objections regarding amount of loss, fine, and amount of restitution, which it declined to rule upon in its August 4, 2009 order, and about which it conducted evidentiary hearings on August 25, 2009 and August 27, 2009.

### A. Objections ## 6-8

Defendant makes three objections in which Defendant asserts that the PSR does not give any factual support for the amount of loss stated in the PSR, $51,781,491.82, that it calculates for the purposes of ascertaining the relevant offense level from the Guidelines. Defendant also argues that he should only be sentenced in accord with the loss amount that was reasonably foreseeable to him, as required by U.S.S.G. §1B1.3 n.2 and that occurred after he joined the conspiracy. U.S.S.G. §1B1.3 n.2 ("The conduct of others that was both in furtherance of, and reasonably foreseeable in

---

[2] Portions of this section were taken from the court's August 4, 2009 order.

connection with, the criminal activity jointly undertaken by the defendant is relevant conduct under this provision."). Defendant argues that he should not be responsible for any of the loss amount because his job responsibilities did not include paying employment taxes, and therefore he cannot be held liable for the underpayment of employment taxes. On this basis, Defendant argues that the court should sentence him in accord with his level of culpability in the conspiracy, with an offense level of 10 as provided by U.S.S.G. § 2T1.9 for conspiracy to impede, impair, obstruct, or defeat tax, rather than that of 25, as calculated in the PSR for conspiracy under § 2X1.1, "which directs the application of a guideline from the substantive offense, which in this case is Tax Evasion. The guideline for a violation of this offense is located at § 2T1.1(a)(1) which references the Tax Table located at § 2T4.1." (PSR ¶ 20.) The Tax Table then generates an offense level on the basis of amount of loss.

In addition, Defendant argues that Dennis Lambka stated that the tax liability was around $18 million, that the Government's change in loss amount calculation shows how unreliable their calculations are, and that Candela, Wyderko, and Widgren testified to the poor financial records that SES maintained such that any loss amount calculation will be difficult. Therefore, Defendant argues the court is unable to make any determination regarding the amount of loss.

The Government, in its response, decreases the amount of loss they assert is attributable to Defendant to $25,229,174.83. (Gov't Resp. at 8-9.) The Government argues that while Defendant can only be sentenced in accord with actions of others "reasonably foreseeable" to him, this includes all "criminal activity jointly undertaken by

6

the defendant." (*Id.*)  The recalculated amount of loss by the Government reflects Defendant's responsibility only for the amount of loss generated after he joined the conspiracy in late 1999; however, the Government argues that after Defendant joined the conspiracy, SES executives continued to file false tax returns for prior years.  (*Id.*)  The Government acknowledges that the lower amount of loss would correspondingly reduce Defendant's offense level to 24 and generate a sentencing range of 51 to 60 months.

First, Defendant's sentence is correctly calculated pursuant to U.S.S.G. §§ 2X1.1 and 2T1.1 for conspiracy for tax evasion, rather than U.S.S.G. § 2T1.9 for conspiracy to impede, impair, obstruct, or defeat tax.  Appendix A of the Guidelines provides that convictions pursuant to 18 U.S.C. § 371 that the appropriate Guidelines are §§ 2A1.5, 2C1.7, 2T1.9, 2K2.1 (if a conspiracy to violate 18 U.S.C. § 924(c)), 2X1.1 and states "[i]f more than one guideline section is reference for the particular statute, use the guideline most appropriate for the offense conduct charged in the court of which the defendant as convicted."  Furthermore, § 2T1.9 itself directs the application of § 2T1.1 for individuals in Defendant's position such that application of § 2T1.1 is "most appropriate" in this case.  In any event, whether the court were to start its Guideline calculation at § 2T1.9 or § 2T1.1, § 2T1.1 would be applied.

Second, "The amount of loss attributable to the defendant is determined according to his relevant conduct as defined under U.S.S.G. § 1B1.3. . . . If the offense involved a 'jointly undertaken criminal activity,' 'all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity' are

7

considered relevant conduct." *United States v. Hoy*, No. 95-3698, 1996 WL 465033, at *4 (6th Cir. Aug. 13, 1996) (citing U.S.S.G. § 1B1.3(a)(1)(B)).  Section 1B1.3 n.2 further states that "[a] defendant's relevant conduct does not include the conduct of members of a conspiracy prior to the defendant joining the conspiracy, even if the defendant knows of that conduct." U.S.S.G. § 1B1.3 n.2.  "In calculating the sentence, the court must determine the amount of loss by a preponderance of the evidence.  Because the court need only make a reasonable estimate of the loss, however, the court's loss determination is entitled to appropriate deference." *United States v. Mason*, 294 F. App'x 193, 202 (6th Cir. 2008) (internal citations and quotation marks omitted) (finding the total benefits received as stated in the victim-impact statement, and no alternative method of calculation offered, meets the preponderance of the evidence standard).

At the hearing conducted August 25, 2009 and August 27, 2009, the Government presented two witnesses to support their amount of loss calculation.  The Government first presented John Owen, an IRS agent who helped in the investigation of SES and participated in a number of interviews by the IRS of SES employees.  Owen calculated the numbers presented in Government Exhibit 1: a chart of the amount of underpayment to the IRS by SES in each quarter of 1997, 1999, and 2000 for each of SES's three employee leasing companies, Design Administrative Resources Technologies, Inc. ("DART"), Employee Resources Management, Inc. ("ERM"), and Professional Employee Team Enterprises, Inc. ("PET").  Owen testified he calculated the underpayments to the IRS by SES by comparing the amounts reported on the '941 Forms SES filed with the IRS and the data tabulated by SES's own accounting

8

software, PayPlus. Based on this information, Owen calculated SES made gross underpayments to the IRS of $25,229,174.83. Owen also testified that, based on his interviews of former SES employees, the PayPlus calculations were reliable. The data Owen used from PayPlus was from Brad Urlaub, an SES employee, who generated the data from the PayPlus system on two different occasions, approximately six months apart from one another, and resulting in very similar outputs. In the course of his interviews with SES employees, Owen also testified that Nancy Clark, an accountant with SES, relayed to Owen that the PayPlus system was reliable in her estimation and that errors with the system were the result of human errors of data input, rather than errors inherent in the software. Owen also testified regarding interviews with Scott Shrake and that Shrake found that PayPlus system accurate and vehemently disagreed with contentions that PayPlus was unreliable. Finally, Owen testified that Leonard Wyderko, a CPA hired by SES to perform an audit of the company's accounting system, found the PayPlus data very consistent. Whereas John Candela, another SES employee, spoke of issues with the software in 1997, he also said that by 1999 and 2000 the system was much improved.

Upon cross-examination, Owen admitted that his calculations showed, in addition to the underpayments, several quarters in which SES maybe overpayments to the IRS for the three companies. Accordingly, Owen's calculation of $25,229,174 signified gross underpayments to the IRS.

The Government's second witness, Gary Patterson, was an IRS agent with the criminal division of the IRS and conducted the investigation of SES. He also testified

regarding the method of calculation for the Government's Exhibit 1.  Patterson also responded to questions from Defendant regarding the overpayments made by SES to the IRS during certain quarters.  In particular, Patterson testified that, if the overpayments for the relevant period were taken into account to offset the amount of underpayments, the total amount of loss would be $2,420,367 less than $25,229,174, that is $22,808,807.

    Defendant presented one witness, Dennis Lambka.  Lambka testified that there were some issues regarding the functioning of SES's accounting software, PayPlus.  Lambka specifically stated that the PayPlus system was purchased at a time when SES had very few employees, and modifications were made to the system as SES grew in size.  Lambka further testified that, while he was not involved in the operation or direct oversight of the PayPlus system, SES did attempt to transition to an accounting software system called Lawson because PayPlus could not handle the increased data that resulted from the increasing number of employees employed by SES; however, Lambka admitted that he did not have specific training or experience in accounting and his information came from statements others made to him.

    Finally, Defendant argued that the relevant date of Defendant joining the conspiracy is May 2000, when Defendant retained attorney Grigsby, in accord with the theory presented by the Government at trial.  At the hearing, Defendant argued that he therefore should only be held responsible for the amount of loss, that is underpayments, filed from that date forward.  In response, the Government has argued continually that Defendant joined the conspiracy in late 1999 when he attended a meeting or series of

discussions with other SES executives, where the plan to defraud the IRS through the "Back-Out Plan" was discussed. Indeed, in its August 4, 2009 order, the court ruled on Defendant's objections regarding whether such meetings or discussions occurred, finding by a preponderance of the evidence that they had. The court found that Dennis Lambka testified at trial to Defendant's discussion of the Back-Out Plan in late 1999:

> Q: And the purpose was to determine how much had been paid to the IRS and then prepare a return which indicated that was the amount owed, is that correct?
> A: Correct.
> Q: Now, did you discuss this determination with anyone else within the termination to engage in the course of conduct with anyone else within the SES firm?
> A: I did.
> Q: Would you tell the ladies and gentlemen of the jury with whom you discussed your determination to file the returns this way?
> A: There were several; Ronald Bray, the President, Dennis Stout, the then CFO, [Defendant], the Chief Legal Counsel, myself, Brian Lambka at some extent, to some extent, and David Carlesimo.
> Q: And this started in late 1999 or mid-1999?
> A: Actually earlier.
> Q: All right. But the filing of these series of returns took place at approximately that point in time?
> A: Yes, this he [sic] did.

(D. Lambka Trial Tr. vol. II, 25:1-20, June 19, 2008.) At trial, David Carlesimo similarly testified:

> Q: Sir, and do you recall that in late 1999 a revenue agent by the name of David Hauenstein was trying to get SES to file Form 941s that were delinquent for several of its companies?
> A: Yes.
> Q: And do you recall participating in a meeting in which Dennis Lambka raised this topic?
> A: Yes.

11

> Q: And would you tell the ladies and gentlemen of the jury what Mr. Lambka said he was going to do in order to comply with Mr. Hauenstein's request?
> A: He was going to file the returns to match up what they had actually paid until they could actually do the return to see what they owed.
> Q: In other words, the return was going to say the amount owed and the amount paid were identical?
> A: Yes.
> Q: Were these returns going to be false then?
> A: Yes.
> Q: Now, was anyone else present when that conversation took place?
> A: Yes.
> Q: Who else was in the room?
> A: Ronald Bray, Dennis Lambka, Brian Lambka, Dennis Stout, Edward Fisher and myself, and Robert Berman.

(Carlesimo Trial Tr. vol. IX, 4:9-5:7, July 1, 2008.) Based on this testimony, Defendant had joined the conspiracy by the time of these meetings or discussions, which occurred in late 1999.

As the finder of fact in this matter, the court finds the Government's witnesses to be credible. Owen and Patterson testified to numerous interviews with SES employees, including Brad Urlaub, Nancy Clark, Scott Shrake, and Leonard Wyderko. Both Government witnesses stated that the interviewees statements corroborated one another, specifically as to the reliability and consistency of the PayPlus system. While Defendant attempted to identify inconsistencies and raise suspicion regarding the accounting software, the statements of most SES employees attribute any errors to human data input, and, that these errors were not systemic. Moreover, Defendant's only witness on this point testified to his own inexperience in handling accounting matters. Accordingly, the court finds that the underpayments made to the IRS by SES

as calculated by Owen, and demonstrated in the Government's Exhibit 1, by comparing SES's filed 941 Forms with the PayPlus data are reliable. *See Mason*, 294 F. App'x at 202 ("In calculating the sentence, the court must determine the amount of loss by a preponderance of the evidence. Because the court need only make a reasonable estimate of the loss, however, the court's loss determination is entitled to appropriate deference.") (internal citations and quotation marks omitted). Even if the court agreed to calculate the amount of loss based on the net underpayments to the IRS by SES during the relevant period, generating an amount of loss of $22,808,807, the amount of loss sustained by the IRS as the result of the SES executives' conspiracy, the result is an offense level of 24, the same as if the court were to calculate the gross amount. *See* U.S.S.G. § 2T4.1. Finally, the court finds that Defendant had joined the conspiracy by late 1999, not May 2000 as Defendant suggests. The court has discussed this issue previously, it was abundantly testified to at trial, as recounted above, and Defendant presents no reasons to alter the finding for purposes of sentencing. As a result, the relevant date for determining the amount of loss, does include those 941 Forms filed in early 2000, as tabulated by the Government in its Exhibit 1.

Accordingly, the amount of loss for purposes of sentencing is either $25,229,174 or $22,808,807, and the corresponding offense level for this amount of loss is 24. Based on the other adjustments ruled upon by this court in its earlier orders, including a -2 adjustment for role in the conspiracy and a +2 adjustment for obstruction of justice, Defendant's final offense level under the Guidelines is 24, and the court will overrule Defendant's objections as to amount of loss.

## B.  Objection # 9

Defendant also objects to the calculation of the fine in paragraph 61 of the PSR. The fine assessed is based on the offense level applicable to Defendant.  U.S.S.G. § 5E1.2(a).  The court has determined that Defendant's offense level under the Guidelines is 24 and will order a fine in accord with the applicable statutes.  Section 3571 of Title 18 provides that a "defendant who has been found guilty of an offense may be sentenced to pay a fine," and that the fine for an individual convicted of a felony cannot be more than $250,000.  18 U.S.C. § 3571(a) and (c).  In addition, under 18 U.S.C. § 3013, a special assessment of $100 is mandatory.  18 U.S.C. § 3013(a)(2)(A).

The Guidelines provide further specific instruction regarding the imposition of fines.  Under U.S.S.G. § 5E1.2(a), a "court shall impose a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine."  U.S.S.G. § 5E1.2(a).  Section 5E1.2(c)(3) provides a table of minimum and maximum fines according to offense level.  The fine range for Defendant's offense level of 24 is $10,000 to $100,000.  U.S.S.G. § E1.2(c)(3).  Subsection (d) also lists a number of factors for the court to consider in determining the amount of the fine. U.S.S.G. § 5E1.2(d).  These include:

> (1) the need for the combined sentence to reflect the seriousness of the offense (including the harm or loss to the victim and the gain to the defendant), to promote respect for the law, to provide just punishment and to afford adequate deterrence;
>
> (2) any evidence presented as to the defendant's ability to pay the fine (including the ability to pay over a period of time) in light of his earning capacity and financial resources;
>
> (3) the burden that the fine places on the defendant and his dependents relative to alternative punishments;

> (4) any restitution or reparation that the defendant has made or is obligated to make;
>
> (5) any collateral consequences of conviction, including civil obligations arising from the defendant's conduct;
>
> (6) whether the defendant previously has been fined for a similar offense;
>
> (7) the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed; and
>
> (8) any other pertinent equitable considerations.
>
> The amount of the fine should always be sufficient to ensure that the fine, taken together with other sanctions imposed, is punitive.

U.S.S.G. § 5E1.2(d).  The PSR further provides that the Administrative Office of the United States Courts, on May 6, 2008, "suggests a monthly cost of $2,076.83 be used for the cost of imprisonment, a monthly cost of $1,905.92 be used for the cost of community confinement, and a monthly cost of $308.80 be used for the cost of probation/supervised release."  (PSR ¶ 62.)

A fine may be appropriate.  Defendant's role was limited in the conspiracy in comparison to his co-conspirators, but while there does not appear to be significant monetary gain to the Defendant in this case as it has not been indicated he personally profited beyond his salary from the conspiracy engaged in by SES executives, Defendant nonetheless violated the law.  Fraud committed against the IRS is a serious offense, with repercussions not only to the United States, but to all its citizens.  A fine would also serve the punitive purpose intended by the Guidelines and offset some of the costs to the Government for Defendant's confinement or later monitoring that are incurred as the result of his sentence.  However, Defendant has limited ability to pay a fine.  (*See* PSR ¶ 51.)  In addition, Defendant is married with two dependent children.  (PSR ¶ 37.)  All these circumstances considered, the court overrules Defendant's

objection as to the issue, finding itself properly positioned to order a fine in its discretion in addition to the mandatory special assessment of $100.

### C. Objection # 10

Finally, Defendant objects to the calculation of restitution in paragraph 63 of the PSR. Defendant maintains that because his offense level should be 10 rather than 25, based on the recalculation of amount of loss, his restitution and fine should reflect that offense level. (Def.'s Memo. at 20.) Defendant argues that tax fraud is not included in the offenses listed in 18 U.S.C. §§ 3663 and 3663A, and therefore the court cannot order restitution. In addition, Defendant argues that pursuant to 18 U.S.C. § 3664(h) liability for restitution should be required in proportion to the economic circumstances of the defendant and his level of involvement in the conspiracy. (*Id.*)

Contrary to Defendant's assertions, restitution in accord with the amount of loss is appropriate under 18 U.S.C. § 3663A, which requires that the sentencing court order restitution if "an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). The IRS can be considered a victim for purposes of ordering restitution under this statute. *See, e.g.*, *United States v. Miller*, 557 F.3d 919 (8th Cir. 2009). Section 3663A(d) requires that the court order restitution in accord with 18 U.S.C. § 3664.

Under 18 U.S.C. § 3664, the burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant." 18 U.S.C. § 3664(e). The court is then required to "order restitution to each victim in the full amount of each victim's losses as determined by the court and without

consideration of the economic circumstances of the defendant," 18 U.S.C. § 3664(f)(1)(A); however, once the court has made this determination, it must set the manner and schedule of repayment in consideration of the defendant's financial situation, 18 U.S.C. § 3664(f)(2). Additionally,

> [i]f the court finds that more than 1 defendant has contributed to the loss of a victim, the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant.

18 U.S.C. § 3664(h).

In the instant case, it is clear that Defendant's role in the conspiracy was much less than that of other SES executives, particularly Dennis Lambka and Ron Bray. While a jury found Defendant guilty of conspiracy to defraud the IRS, there is no evidence that Defendant profited beyond the salary he received from SES in compensation for his employment with the company. Nor, as Defendant has argued before this court, was Defendant directly responsible for filing SES tax returns with the IRS; rather, Defendant's primary role in the conspiracy was to conceal the true nature of SES's tax deficiencies from SES's outside tax counsel Grigsby. Moreover, Defendant has limited ability to pay. (*See* PSR ¶ 51.) In addition, Defendant is married with two dependent children. (PSR ¶ 37.)

"'In cases involving multiple defendants, § 3664(h) explicitly gives district courts discretion as to whether they should apply joint and several liability or whether liability should be apportioned among the defendants based on their economic circumstances and their respective contributions to the victims' losses.'" *United States v. Bogart*, – F.

3d – , -- 2009 WL 2475357, at *10 (6th Cir. 2009) (quoting *United States v. Hunt*, 521 F.3d 636, 649 (6th Cir. 2008)).  "The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant."  18 U.S.C. § 3664(e).

Defendant participated in the conspiracy with other executives at SES to defraud the IRS through the Back-Out Plan.  Unlike his co-conspirators, however, there has been no showing that Defendant personally profited from the conspiracy.  In addition, his role was limited in comparison to his co-conspirators.  Finally, Defendant may not have the ability to pay significant restitution toward the loss amount.  Because the court remains capable of apportioning restitution in this case among Defendant and his co-conspirators, and setting Defendant's portion at a lesser percent of the restitution amount, *see* 18 U.S.C. § 3664(h); *Bogart*, – F. 3d – , -- 2009 WL 2475357, at *10 (quoting *Hunt*, 521 F.3d at 649), the court will overrule Defendant's restitution objection.

### III.  CONCLUSION

For the reasons stated above, IT IS ORDERED that the pending objections contained in Defendant's "Memorandum in Support of Defendant's Guideline Objections," [Dkt. # 112] are OVERRULED.  Specifically, pending objections ## 6-10 are OVERRULED.

IT IS FURTHER ORDERED that the court will conduct a sentencing hearing on **October 22, 2009 at 2:00 p.m.**

       S/Robert H. Cleland  
       ROBERT H. CLELAND  
       UNITED STATES DISTRICT JUDGE

Dated: September 11, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, September 11, 2009, by electronic and/or ordinary mail.

 S/Lisa Wagner
Case Manager and Deputy Clerk
(313) 234-5522